# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

HIGINIO DE JESUS
DOMINGUEZ PEREZ,

                Petitioner,

      v.

ACTING WARDEN OF THE
ADELANTO DETENTION
CENTER, et al.,

             Respondents.

Case No. 5:26-cv-03936-MBK

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS

Petitioner Higinio De Jesus Dominguez Perez, a native and citizen of Guatemala, is in the custody of the Department of Homeland Security ("DHS") at the Adelanto Detention Facility. Approximately 22 years ago, Mr. Dominguez Perez entered the United States without inspection and has remained in the country since that time. Mr. Dominguez Perez is the married

father of three United States citizen children and the primary financial support for his family.

On July 8, 2026, Immigration and Customs Enforcement ("ICE") officers arrested Mr. Dominguez Perez and later transferred him to the Adelanto Detention Facility. In this habeas action, Mr. Dominguez Perez argues that his arrest and ongoing detention violates due process and the immigration laws. Respondents concede Mr. Dominguez Perez is eligible for a bond hearing under 8 U.S.C. § 1226(a) as a member of the Bond Eligible Class certified in *Maldonado Bautista*, No. 5:25-CV-01873-SSS-BFM (C.D. Cal.), but oppose any further relief. For the reasons that follow, the Court concludes that Mr. Dominguez Perez is entitled to release because the Government knowingly violated his rights under *Maldonado Bautista* and denied him the procedural protections to which he is entitled under Section 1226(a).

## I.    FACTS AND PROCEDURAL HISTORY

Petitioner Dominguez Perez is a national and citizen of Guatemala who entered the United States without inspection when he was 16 years old. Dkt. 1 at 6. Petitioner has lived continuously in the United States for the past 22 years. He is a married father of three United States citizen teenagers and the primary financial support for his family. *Id*.

On July 8, 2026, Petitioner left his home and drove to a co-worker's house that is located three blocks away. *Id*. at 17. After picking up his co-worker, Petitioner's car was surrounded by several unmarked vehicles. *Id*. The officers approached his car but did not identify themselves. *Id*. The officers yelled to Petitioner and his co-worker to exit the vehicle or else they would be forcibly removed from it. *Id*. Fearing for his safety, Petitioner and his co-worker got out of the car and were immediately taken into custody. *Id*.

2

Petitioner's step-daughter, who is 19 years old, rushed over to the scene. *Id*. She begged the officers to let her hug Petitioner and say goodbye, but the officers refused. *Id*.

At the time of Petitioner's arrest, the officers did not explain why he was being detained or have a warrant for Petitioner's arrest. *Id*.; *id*. at 6. The officers took Petitioner to an office in San Bernardino and later transferred him to the Adelanto Detention Facility. *Id*. at 17. When Petitioner was taken into custody, he was not provided with notice of the charges against him, an opportunity to respond, or a pre-deprivation hearing before a neutral adjudicator. *Id*. at 6. Later, on July 14, 2026, DHS filed a Notice to Appear ("NTA") charging Petitioner as inadmissible under the immigration laws. *Id*.

During his time in detention, Petitioner's health has suffered. *Id*. at 17. Petitioner has diabetes, high blood pressure, and other medical problems. *Id*. Petitioner's sister-in-law attempted to deliver Petitioner's medication to the ICE office in San Bernardino, but the medication was never provided to Petitioner. *Id*. At Adelanto, the staff indicated that Petitioner would be provided medication for his diabetes but, as of the date of the filing of this action, none had been provided. *Id*.

On July 14, 2026, Petitioner filed the instant Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Dkt. 1. Petitioner argues that he is a member of the Bond Eligible Class certified in *Maldonado Bautista* and should have received a bond hearing under 8 U.S.C. § 1226(a), but that the Government has instead treated him as detained under 8 U.S.C. § 1225(b). *Id*. at 14-15. Petitioner claims that his detention violates substantive and procedural due process and the immigration laws. *Id*. at 11-14. The Petition asks the Court to order Petitioner's immediate release, or in the alternative, to provide Petitioner with a constitutionally adequate bond hearing. *Id*. at 15.

On July 15, 2026, the Court issued Notice of General Order 26-05 and a Briefing Schedule. Dkt. 5. The parties consented to jurisdiction of the undersigned Magistrate Judge on July 20, 2026. Dkt. 6.

On July 22, 2026, Respondents filed their Answer to the Petition. Dkt. 8. Respondent clarified that Petitioner was "detained by Immigration and Customs Enforcement *for the first time ever* on July 8, 2026 for the purposes of initiating removal proceedings against him." *Id.* at 2 (emphasis in original). Respondents agreed that Petitioner's detention is governed by Section 1226(a) and that Petitioner is entitled to a bond hearing pursuant to *Maldonado Bautista. Id.* at 2-4. Respondents argued, however, that Petitioner's Fifth Amendment claims fail on their merits because he has no "vested" liberty interest and he has failed to request a bond hearing in immigration court. *Id.* at 4-7. Petitioner filed a Traverse on July 24, 2026. Dkt. 9.

## II.   DISCUSSION

This habeas case is the product of the Government's continued noncompliance with the class-wide relief and final judgment entered in *Maldonado Bautista*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal.), 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025). On December 18, 2025, District Judge Sunshine S. Sykes granted the petitioners' motions for partial summary judgment and classwide certification, declared unlawful the Government's policy of detaining individuals like Petitioner—who entered without inspection—under 8 U.S.C. § 1225(b), and vacated DHS policy implementing its incorrect interpretation of the immigration laws. Under Judge Sykes' order, class members like Petitioner should be subject to the detention and release authority of 8 U.S.C. § 1226(a), under which they are eligible for certain procedural protections including a bond hearing before an

4

Immigration Judge ("IJ"). Nonetheless, nearly a year after Judge Sykes issued her order, the Government continues to arrest and detain *Maldonado Bautista* class members under the putative authority of Section 1225(b) and deny them the benefits to which they are entitled under the *Maldonado Bautista* final judgment. As in this case, the Government readily concedes its actions are unlawful once a class member files a habeas petition challenging their continued detention under Section 1225(b).

Because the parties agree that Petitioner is being detained unlawfully, the primary issue for the Court to decide is the appropriate remedy for the Government's violation of Petitioner's rights. Respondents argue that the Court should only grant the relief they should have already provided to Petitioner: a bond hearing under Section 1226(a). Petitioner argues that due process principles, as well as Section 1226(a), require his outright release. Following the decisions of courts across the Ninth Circuit that have considered this issue, the Court concludes that Petitioner is entitled to release due to the Government's intentional violations of his statutory and constitutional rights.

**A. Detention under Section 1226(a)**

The Court begins by reviewing the procedures applicable to a noncitizen's arrest and detention under Section 1226(a).

Section 1226(a) "sets out the general rule" for "the arrest, detention, and release" of "aliens present in the country" "who are believed to be subject to removal." *Nielsen v. Preap*, 586 U.S. 392, 396 (2019). Under Section 1226(a) and its implementing regulations, a DHS officer may arrest and take into custody a noncitizen "under the authority of Form I–200, Warrant of Arrest" issued by certain designated supervisory officers. 8 C.F.R. § 236.1(b).[1] The

---

[1] DHS officers have the authority to conduct a warrantless arrest if there is

Government "may" detain such individuals "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). DHS officers conduct an initial custody determination to decide whether to release or detain the person. 8 C.F.R. § 1236.1(c)(8). Unless the person is subject to mandatory detention under Section 1226(c) based on their criminal history, DHS has "the discretion either to detain the alien or to release him on bond or parole." *Nielsen*, 586 U.S. at 396. The DHS officer must release the noncitizen if they "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).

After the initial custody determination, the noncitizen may request that an IJ review the determination at a bond hearing in immigration court. *See* 8 C.F.R. §§ 1236.1(d)(1), 1003.19. "If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the IJ will order his release." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). The noncitizen can "appeal an adverse decision to the BIA." *Id*. (citing 8 C.F.R. § 236.1(d)(3)). Alternatively, "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." *Id*. (citing C.F.R. § 1003.19(e)). "The same procedures apply to this new hearing, and its outcome is also appealable to the BIA." *Id*. The noncitizen may also seek judicial

---

probable cause to believe a person is subject to removal and "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). *See generally Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980). Such individuals must be promptly brought before an examining officer to determine if the person is subject to removal, 8 C.F.R. § 287.3(a), and if they are subject to Section 1226, referred for a custody determination "48 hours of the arrest" absent an emergency or other extraordinary circumstances, *id*. at § 287.3(d).

review of the immigration courts' bond determination through a habeas petition challenging the determination as constitutionally deficient, legally erroneous, or an abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024).

Reviewing this statutory and regulatory framework, the Ninth Circuit has observed that "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Rodriguez Diaz*, 53 F.4th at 1202.

**B. DHS's Policy Change and the *Maldonado Bautista* Final Order and Judgment**

Until recently, it had been the Government's longstanding position that individuals like Petitioner—who entered the United States without inspection, but were later apprehended in the interior of the country—were subject to the detention and release authority of Section 1226. However, the Government now takes a different position. On July 8, 2025, DHS issued a notice entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," in which it announced that it had "'revisit[ed] its legal position on detention and release authorities,' determining that Section 235 of the Immigration and Nationality Act ("INA") would serve as the applicable immigration detention authority rather than Section 236 for all 'applicants for admission.'" *Bautista v. Santacruz*, 813 F. Supp. 3d 1084, 1094 (C.D. Cal. 2025) (quoting July 8, 2025 notice). "In other words, the change in policy requires ICE employees to consider anyone arrested in the United

7

States and charged with being inadmissible as an 'applicant for admission' under 8 U.S.C. § 1225(b)(2)(A)." *Id*. The BIA has since issued a decision agreeing with DHS's position that such individuals are properly subject to Section 1225(b). *See Matter of Yajure-Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

DHS's new policy significantly impacts the rights of noncitizens like Petitioner and their ability to seek release from immigration confinement. Section 1225 applies to two categories of noncitizens: "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation"; and "Section 1225(b)(2) . . . serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Under the Government's new policy, noncitizens like Petitioner are categorized as falling within the second category—"applicants for admission" subject to Section 1225(b)(2). Under that provision, a noncitizen "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" into the country. 8 U.S.C. § 1225(b)(2)(A).

While Section 1225(b)(2) states that applicants for admission "shall" be detained, they nonetheless "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit'" under the authority of Section 1182(d)(5)(A). *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)). Parole determinations are conducted by DHS officers pursuant to standards laid out in DHS policy, and the grant rates for parole have significantly fluctuated over time. *See generally* 8 C.F.R. § 212.5(a); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 323-25 (D.D.C. 2018). The immigration courts have no authority to review parole determinations by DHS officers. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. at 219 n.4 (whether a noncitizen "might be

subject to parole by the Attorney General or DHS . . . is not an issue that the Immigration Judge has authority to consider"). Further, the immigration courts lack the authority to hold a bond hearing for applicants for admission detained under Section 1225(b). *See Jennings*, 583 U.S. at 297-300.

DHS's new policy has engendered an enormous amount of litigation in courts across the country, including the class action in *Maldonado Bautista*. The Court will not recount the lengthy procedural history of *Maldonado Bautista*, which is detailed in Judge Sykes' December 18, 2025 order and final judgment. *Bautista*, 813 F. Supp. 3d at 1093-95. The upshot of Judge Sykes' order is as follows. First, the court certified a "Bond Eligible Class" comprised of: noncitizens "without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." *Id.* at 1025. Second, the court issued a class-wide declaration that the Government's new policy with respect to individuals who entered without inspection violated the INA and due process and vacated the DHS policy as contrary to law. *Id.* at 1127. The court's declaration makes clear that, going forward, class members may only be subject to the detention and release authority in Section 1226(a). *Id.*

Several months later, on June 18, 2026, Judge Sykes granted the petitioners' motion to enforce the final judgment and, based on Respondents' continued noncompliance with her orders, vacated *Matter of Yajure-Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). *Bautista v. Santacruz*, 820 F. Supp. 3d 1016, 1032 (C.D. Cal. 2026). The Ninth Circuit subsequently stayed the vacatur of *Yajure-Hurtado* as well as Judge Sykes' order and final judgment outside the Central District of California, but declined to stay the order and final

judgment inside this District. *See Bautista, et al. v. United States Department of Homeland Security, et al.*, Nos. 25-7958, 26-1044, Dkt. 14 (9th Cir. March 31, 2026).

As Respondents acknowledge, the final judgment in *Maldonado Bautista* has preclusive effect for members of the Bond Eligible Class in the Central District like Petitioner. *See* Dkt. 8 at 4 ("Respondents acknowledge that Petitioner's claim in this action appears to be subject to the *Bautista* judgment, the order enforcing the same, and to any applicable appellate proceedings relating to it."). *See also Granados v. Warden et al.*, No. 5:26-CV-00670-AH-DFM, 2026 WL 852211, at *3 (C.D. Cal. Mar. 25, 2026) ("it appears that Respondents are precluded from relitigating whether "Bond Eligible Class" members—such as Petitioner—are entitled to the relief provided in the Bautista final judgment"); *Miguel Angel Cortez Lozano v. Ernesto Santacruz Jr. et al.*, No. 5:26-cv-00313-SSS-BFM, 2026 WL 325462, at *4 (C.D. Cal. Feb. 4, 2026). *See generally De Corral v. Woosley*, No. 4:25-cv-145-BJB, 2026 WL 524778, at *3 (W.D. Ky. Feb. 25, 2026) ("Under settled principles of collateral estoppel, the Central District's final declaratory judgment binds the parties 'with respect to the matters declared.'") (quoting Restatement (Second) of Judgments § 33).

Nonetheless, the Government has declined to comply with the *Maldonado Bautista* final judgment since it was issued. *See Bautista*, 820 F. Supp. 3d at 1023 (discussing the Government's systematic noncompliance) Instead, as discussed above, the Government continues to arrest and detain Bond Eligible Class members like Petitioner under the putative authority of Section 1225(b), even though it recognizes that its actions are unlawful. As a result, hundreds of Bond Eligible Class members like Petitioner have been unlawfully arrested and detained in violation of their statutory and due

process rights under the *Maldonado Bautista* final judgment. *Id.*

**C. Petitioner's Claims**

The Court now turns to Petitioner's claims for relief. Petitioner argues that his ongoing detention violates: (1) substantive due process because no valid interest justifies his detention; (2) procedural due process because he was detained without a pre-deprivation hearing; (3) Section 1226(a) because he has been denied a bond hearing; and (4) the *Maldonado Bautista* judgment. Dkt. 1 at 11-15. With respect to the last claim, Petitioner argues that "[b]y denying Petitioner a bond hearing under § 1226(a) and asserting that he is subject to mandatory detention under § 1225(b)(2) and refusing to provide an individualized and good faith consideration of his eligibility for release based on secretive and manipulative directives designed to interfere with the valid final judgment, Respondents violate Petitioner's statutory rights under the INA and the Court's judgment in *Maldonado Bautista.*" *Id.* at 14-15.

As discussed, Respondents do not dispute that Petitioner's detention violates the *Maldonado Bautista* final judgment and that he is entitled to a bond hearing under Section 1226(a). Dkt. 8 at 4. Respondents argue, however, that no additional relief is warranted because Petitioner was not previously released from custody and lacks a "vested" liberty interest. *Id.* at 5. They also argue that Petitioner should be obligated to first seek a bond hearing in immigration court before seeking any additional relief here. *Id.* at 5-7.

The Court finds that Petitioner has shown that he is entitled to release based on the Government's knowing violation of his statutory and constitutional rights. In so holding, the Court joins the growing number of courts in the Ninth Circuit who have found that the Government's noncompliance with *Bautista* and similar rulings warrants release. *See, e.g., Reyes v. Santacruz, Jr.*, No. 26-cv-3394-E, 2026 WL 2069974, at \*2 (C.D. Cal.

11

July 13, 2026); *Garcia-Maya v. Mattos*, No. 2:26-cv-01513-RFB-BNW, 2026 WL 1965886, at *7 (D. Nev. July 7, 2026); *Rodas-Dieguez v. Noem*, No. 3:26-cv-00976-RBM-MMP, 2026 WL 549910, at *1 (S.D. Cal. Feb. 26, 2026); *Maciel v. Noem*, No. 1:26-cv-01318-DC-CKD, 2026 WL 496948, at *5 (E.D. Cal. Feb. 23, 2026). *See also Moctezuma v. Henkey*, No. 1:25-CV-00741-BLW, 2026 WL 18809, at *5 (D. Idaho Jan. 2, 2026) (observing that "[i[n recent months, courts across the country have ordered the release of detainees in similar situations" and collecting cases).

As these courts have found, release is an appropriate remedy given the nature of the violations at issue. "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under" Section 1225(b). *Rodriguez Diaz*, 53 F.4th at 1202. As discussed above, these protections include: (1) the requirement that DHS generally obtain a warrant, issued following supervisory review, to arrest a noncitizen; (2) an initial custody determination by a DHS officer shortly after the noncitizen's arrest; (3) if the noncitizen is not released at the initial custody determination, the right to seek review before an IJ at a bond hearing; (4) the right to appeal an adverse IJ bond ruling to the BIA and to seek federal court review in habeas; and (5) the right to seek a new bond hearing before an IJ based on changed circumstances. *See supra* Section III.A. Section 1226(a) and its implementing regulations therefore provide "several layers of review" to protect against erroneous deprivations of liberty. *Rodriguez Diaz*, 53 F.4th at 1202.

But because the Government arrested Petitioner under the concededly incorrect authority of Section 1225(b), Petitioner has been deprived of these protections. It follows that "Petitioner's detention 'was unlawful from its inception because ICE detained him under the wrong statute and without

affording him any notice or process whatsoever, much less the procedures due under Section 1226(a).'" *Garcia-Maya*, 2026 WL 1965886, at *8 (quoting *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 319-20 (E.D.N.Y. 2025)). "In the absence of an initial custody determination, which establishes a lawful basis for detention in the first instance, a subsequent bond hearing 'is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip' Petitioner of his freedom." *Id.* (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025)).

Here, Respondents do not defend their noncompliance with the *Maldonado Bautista* judgment, deny that they knowingly and intentionally violated Petitioner's rights, or contest that he has been deprived of critical procedural protections. Instead, Respondents argue that Petitioner cannot show a due process violation because he lacks a "vested" liberty interest, distinguishing cases in which courts have ordered the release of noncitizens re-detained after a prior release because of insufficient pre-deprivation process. Dkt. 8 at 3-4 (citing cases). The Court agrees that Petitioner's circumstances are not analogous to a noncitizen who had been previously released from immigration custody. But even where a noncitizen has not been previously released from custody, Section 1226(a) provides protections that safeguard Petitioner's due process protected interest in freedom from arbitrary confinement. See *Garcia-Maya*, 2026 WL 1965886, at *5 ("this Court finds that Petitioner is entitled to the procedural protections provided by § 1226(a), not merely by statute and regulation, but also by the Due Process Clause"); *Bautista*, 813 F. Supp. 3d at 1094 (discussing "the due process protections found within § 1226(a)"). *See also Bautista*, 820 F. Supp. 3d at 1033 (finding that the Government's noncompliance has led to "detention

13

without due process" and "deprive[d] members of the Bond Eligible Class of their liberty, economic stability, and fundamental dignity")

The Supreme Court has long recognized that due process requires that immigration detention bear a "'reasonable relation'" to a non-punitive purpose. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). There are two permissible non-punitive purposes for detention under the immigration laws: ensuring a noncitizen's appearance at removal proceedings or removal and preventing danger to the community. *Id.* at 690-92. Section 1226(a), and its implementing regulations, establish procedures to ensure that the Government only detains noncitizens where it advances these purposes. By denying Petitioner these protections, Respondents have created an unacceptably high risk that Petitioner's detention is not justified on danger or flight risk grounds and that he remains confined solely due to the Government's refusal to comply with the *Maldonado Bautista* judgment. Indeed, in their Answer, Respondents do not argue that Petitioner presents a danger or flight risk or that there is any other valid governmental interest advanced by his ongoing detention.

Respondents' only other defense is that "petitioners in detained removal proceedings – not ICE – control whether to seek a bond hearing under 8 U.S.C. § 1226(a)" because the regulations require that "detainee must affirmatively request such a hearing before an IJ." Dkt. 8 at 5-6. Respondents offer several examples of why a detainee may elect not to seek a bond hearing as "a strategic litigation decision." *Id.* at 6. But Petitioner plainly wants a bond hearing: he expressly requests one, as an alternative to release, in the Petition. Dkt. 1 at 15. The problem—as Petitioner argues and Respondents do not dispute—is that the immigration courts "have refused to abide by the declaratory relief" in *Maldonado Bautista* and deny bond hearings to class

members who request them. Dkt. 1 at 10. Moreover, the typical way that noncitizens request a bond hearing is by checking a box on the Form I-286 Notice of Custody Determination, which is issued to a noncitizen following the initial custody determination made by an ICE officer. *See Garcia-Maya*, 2026 WL 1965886, at *5. But DHS's new policy for noncitizens who entered without inspection "specifically instructs ICE agents against issuing any 'Form I-286, Notice of Custody Determination' to noncitizens like Petitioner, because individual custody determinations are only required under § 1226 by regulation." *Id*. The Court therefore rejects that Petitioner should have made a request for a bond hearing based on a process that was not made available to him and, in any event, would have been denied by the immigration courts.

Because Petitioner's detention has been unlawful from the outset, the Court concludes that the "most appropriate remedy for this violation would be to return Petitioner to the previous status quo by releasing him from detention." *Reyes*, 2026 WL 2069974, at *2. The Ninth Circuit has recognized that "the purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up). *See also United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (cleaned up). This principle has particular force where, as here, the protections at issue are intended to prevent an unlawful detention in the first place. *See United States v. Morrison*, 449 U.S. 361, 364 (1981) (observing "the general rule that remedies should be tailored to the injury suffered").

Release is particularly warranted given the Government's continued

refusal to comply with the *Maldonado Bautista* final judgment. "[I]n suits against government officials and departments, we generally assume that they will comply with declaratory judgments." *United Aeronautical Corp. v. United States Air Force*, 80 F.4th 1017, 1031 (9th Cir. 2023). While the Government has appealed the *Maldonado Bautista* final judgment, "the government is rebelling against the basic principle underlying our constitutional order that 'an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.'" *Garcia-Maya*, 2026 WL 1965886, at *9 (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947)). Under these circumstances, the Court finds that "law and justice" require Petitioner's release. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) ("Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'"); *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013).

### III.   CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner Dominguez Perez's (A# 099-465-483) release subject to reasonable conditions of supervision and prohibiting his re-detention absent notice and a hearing before a neutral decisionmaker at which the Government shows changed circumstances requiring his detention; and (3) Respondents shall file a status report no later than three (3) days from the date of this Order confirming that Petitioner has been released from Respondents' custody consistent with this order.

Dated: July 30, 2026

_____
HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE

16